**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CRAIG CAMPBELL,⁣ )
)
        Plaintiff, )    Case No. 2:13-cv-1560-JFC
)
    v. )
)
GEORGE E. CONROY, *et al.,* )
)
        Defendants. )

## MEMORANDUM OPINION

CONTI, Chief District Judge.

### I. Introduction

    This civil action arises out of a dispute between plaintiff Craig Campbell ("Campbell" or "plaintiff") and various officials of Harrison Township, Pennsylvania (the "Township") concerning land usage issues and the Township's escrowing of insurance proceeds following two fires which occurred on plaintiff's Harrison Township property. Plaintiff filed a *pro se* complaint naming as defendants George E. Conroy ("Conroy"), William R. Poston ("Poston"), Robin Bergstrom ("Bergstrom"), William E. Mitchell, Sr. ("Mitchell"), Gary J. Lilly ("Lilly"), Faith A. Payne ("Payne"), Joe Marino ("Marino"), Norb Cieslinski ("Cieslinski"), and the Township (collectively with the individual defendants, "defendants"). He contends that defendants violated certain of his federal constitutional rights by withholding insurance proceeds, by failing to properly enforce the law, and by effectuating a "taking" of his property.[1]

---

[1] The court has subject-matter jurisdiction over Campbell's claims pursuant to 28 U.S.C. §1331.

Presently pending before the court are defendants' motion to dismiss or, alternatively, motion for summary judgment (ECF No. 4) and plaintiff's motion to amend the complaint (ECF No. 22). For the reasons that follow, defendants' motion to dismiss will be granted and plaintiff's motion to amend will also be granted.

## II. <u>Plaintiff's Allegations</u>[2]

The complaint in this matter (ECF No. 1) appears to set forth four claims against defendants based upon the alleged violation of plaintiff's rights under the Fifth and Fourteenth Amendments to the U.S. Constitution. Count I (referred to in the complaint as "Section I") asserts a violation of plaintiff's substantive due process rights based on his "[p]roperty systematically being devalued." (Compl. at 2.) Plaintiff alleges that "[a]ll my properties in Harrison Township have been broken into" and the Township "does not provide needed patrols by the police to protect my property." (Compl. ¶¶ 1-2.) He states "[t]here is no way to protect [his] property due to the negligence of the township" (*id.* ¶ 5), and, because of the crime in the Natrona section of the Township, his property "has lower significant value" (*id.* ¶3) and he is "being forced to sell properties at a significant [loss]" (*id.* ¶8). Plaintiff avers that "[p]roperty rights have been violated when the township seeks to regulate commerce on residential property." (*Id.* ¶9.)

In Count II plaintiff alleges that his "[p]roperty is being taken without due process." (Compl. at 3.) Plaintiff claims that repairs totaling $4,900.00 were made to the roof of the building on his 58-60 Garfield Street property. (Compl. ¶12.) He submitted a bill to the Township "as directed by Faith Payne," who "had knowledge of the work that was going to be

---

[2] The allegations in the complaint are accepted as true only for the purpose of resolving the motion to dismiss.

2

done." (*Id.* ¶13.) Plaintiff "was informed later that this was not by procedure," and he contends

that Payne "had a duty before this all happened to inform me of the correct procedure." (*Id.*

¶13.) He complains that "[t]o date the bill has not been paid by the township" (Compl. ¶14), and

he asks for a full accounting of all monies being held by the Township for repairs to be done on

the property. (*Id.* ¶15.) Plaintiff avers that "[t]he use of the building is our unquestionable

property right. It's [sic] occupancy as a rental unit in the future is at my discretion and it not

[sic] the dictates of Harrison Township." (*Id.* ¶17.) He maintains that "[s]ince no occupancy is

being pursued no inspection for an occupancy permit is needed." (*Id.*)

Plaintiff's third claim asserts a violation of his equal protection rights premised on a

theory of selective enforcement of the law. Plaintiff contends that, after he "questioned about

[his] fire money" and made "demands on code enforcement to do their job concerning the

property sitting across from 68 Chestnut Street Natrona," he was "retaliated against by code

enforcement against my property." (Compl. ¶18.) He alleges that, during a meeting with code

enforcement officers on September 18, 2013, his wife and he presented a bill for the roof repairs

(*id.* ¶22) and pointed out four other nearby properties that were "far worse than ours." (*Id.* ¶23.)

Plaintiff claims he is "being singled out for [his] opinion for the neglect of Harrision Township

and for demands of [his] fire money." (*Id.* ¶26.)

In plaintiff's fourth claim, he asserts a "[t]aking of property rights" based on the

Township's Ordinance 1963, §201, entitled "Transfer of Ownership of Certain Properties" (the

"Ordinance" or "Ordinance 1963"). (Compl. at 6-7; Ex. G to Def.s' Mot. Summ. Judg., ECF No.

4-8.)[3]  This ordinance places restrictions on the transfer or leasing of dwelling properties in cases where the owner has received a "notice" that the property is out of compliance "with the applicable building code, property maintenance regulations or dangerous buildings ordinance" or where a citation has been issued for violations of the same.  *See* Ordinance 1963, §201(1) and (8) ("Ordinance 1963").

In pertinent part, Ordinance 1963 provides:

> No owner of property containing a dwelling unit, which property is subject to a Township notice... shall sell, transfer, mortgage, lease or otherwise dispose of such property or structure subject to such notice without first delivering to the grantee, transferee, mortgagee or lessee a document of property compliance issued by the Township Building inspector or other authorized officer of the Township.

*Id.* §201(1).  Ordinance 1963 sets forth the conditions under which a document of compliance will be issued, *id.* §201(2), and it provides an appeals process in the cases where an individual's application for such documentation is denied.  *Id.* §201(6).  Ordinance 1963 provides that no occupancy or building permit will be issued for properties that are transferred in violation of §201, *id.* §201(3), and violators may be subject to criminal penalties, *id.* §201(7).

Plaintiff alleges that Ordinance 1963 effectuates a total economic taking of his property. (Compl. ¶¶ 27-29.)  He asserts that the "[t]erms and conditions brought about by Township Ordinance No. 1963 makes any transfer of the owners [sic] property specifically 58-60 Garfield Street Natrona unsellable and virtually worthless."  (*Id.* ¶31.)  As a result, plaintiff asserts that "no property taxes should be [owed]" (*id.*), and the Township should instead pay him the "full value of said property" (*id.* ¶32).

---

[3] Because Ordinance 1963 is a matter of public record, it may be considered by the court in deciding a motion to dismiss filed pursuant to Rule 12(b)(6).  *Sands v. McCormick,* 502 F.3d 263, 268 (3d Cir. 2007) (district court may rely on matters of public record in deciding a motion to dismiss).

On November 19, 2013, defendants filed their motion to dismiss or, alternatively, motion for summary judgment (ECF No. 4). Defendants challenge plaintiff's complaint on four grounds. First, they argue that plaintiff did not allege a viable Fourteenth Amendment or Fifth Amendment violation because he failed to exhaust the remedies that are available to him and did not allege that other similarly situated people were differently treated. Second, defendants argue that Ordinance 1963 is a constitutionally valid property regulation and, therefore, plaintiff's Fifth Amendment takings claim fails as a matter of law. Third, defendants argue that plaintiff's claims are barred by the Eleventh Amendment. Lastly, defendants argue that they are entitled to qualified immunity.

On July 9, 2014, plaintiff filed his response to defendants' motion (ECF No. 21). That same day, he filed a motion to amend the complaint (ECF No. 22). On July 24, 2014, defendants filed a brief in opposition to plaintiff's motion (ECF No. 24).

### III. <u>Standard of Review</u>

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993).[4] In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to

---

[4] Generally, a district court may not consider matters outside of the complaint when ruling on a Rule 12(b)(6) motion to dismiss. "If, on a motion under Rule 12(b)(6)…, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). When a motion to dismiss is treated as a motion for summary judgment, the "parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id*. The party opposing summary judgment must be afforded an adequate opportunity to obtain discovery. *See Brown v. U.S. Steel Corp*., 462 F. App'x 152, 155 (3d Cir. 2011) (citing *Dowling v. City of Phila*., 855 F.2d 136, 139 (3d Cir.1988)). Here, defendants appended materials outside of the pleadings in support of their motion. The court will not consider these materials at the present time given the nascent stage of these proceedings and the fact that plaintiff seeks leave to amend his complaint. Instead, the court will address defendants' motion as a motion to dismiss in accordance with Rule 12(b)(6).

prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pleaded factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id*. (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. … Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id*. (quoting *Twombly*, 550 U.S. at 556–57) (internal citation omitted).

Two working principles underlie *Twombly*. *Iqbal,* 556 U.S. at 678. First, with respect to mere conclusory statements, a court need not accept as true all the allegations contained in a complaint. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555.) Second, to survive a motion to dismiss, a claim must state a plausible claim for relief. *Id*. at 679. "Determining whether a complaint states a plausible claim for relief will ... be a content-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. "But

where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting Fed R. Civ. P. 8(a)(2)).

In this case, plaintiff is proceeding without the benefit of legal counsel. *Pro se* plaintiffs are held to a less stringent standard than individuals who are represented by counsel. *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("*[P]ro se* litigants are held to a lesser pleading standard than other parties."). Nevertheless, for Rule 12(b)(6) purposes, "a *pro se* complaint must still 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Salley v. Sec'y Pa. Dep't of Corr.,* 565 F. App'x 77, 81 (3d Cir. 2014) (quoting *Iqbal,* 556 U.S. at 678); *see Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) ("[A] litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se.").

## IV. **Discussion**

Although the complaint does not specifically refer to 42 U.S.C. §1983, the court construes the complaint as asserting claims under that statute. Section 1983 provides private citizens a right of action against

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws ... .

42 U.S.C. §1983. This statute does not create substantive rights, but "provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996).

To state a viable claim under 42 U.S.C. § 1983, "a plaintiff 'must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" *Lomax v. U.S. Senate Armed Forces Serv. Comm.,* 454 F. App'x 93, 95 (3d Cir. 2011) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). Because there is no question that the Township officials named as defendants acted under color of state law, the relevant issue is whether plaintiff made sufficient factual allegations to permit this court to infer he has a plausible claim for a deprivation of his constitutional rights. Here, plaintiff purports to assert violations of his rights under the Fifth and Fourteenth Amendments.

### A. Defendants' Threshold Arguments for Dismissal

As a preliminary matter, the court will address certain of defendants' arguments for dismissal which are common to all the claims in the complaint. Defendants contend that: (i) they are entitled to Eleventh Amendment immunity; (ii) they are entitled to qualified immunity; or (iii) plaintiff's claims are unripe because he failed to exhaust his available remedies. The court is not persuaded that a dismissal of the complaint is appropriate on these grounds.

First, the court does not agree that defendants are entitled to Eleventh Amendment immunity. The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although by its terms the Eleventh Amendment applies only to suits against a state by citizens of another state, the Supreme Court has held that the Eleventh Amendment's protections extend to suits brought by citizens against their own states. *Bd. of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363 (2001) (citing decisions). "The ultimate

8

guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Id.* (citing *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000)). It is well established, however, that municipalities (and, thus, municipal officers) do not enjoy Eleventh Amendment immunity. *See Bolden v. Southeastern Pa. Transp. Auth.,* 953 F.2d 807, 814 (1991) ("[A]lthough political subdivisions of a state, such as counties and municipalities, fall within the term 'State' as used in the Fourteenth Amendment,[ ] political subdivisions are not 'State[s]' under the Eleventh Amendment.") (internal footnote omitted)(second alteration in the original); *see Will v. Michigan Dept. of State Police,* 491 U.S. 58, 70 (1989) ("States are protected by the Eleventh Amendment while municipalities are not...."); *Febres v. Camden Bd. of Educ.*, 445 F.3d 227, 229 (3d Cir. 2006) ("The Supreme Court has long held that counties, municipalities, and political subdivisions of a state are not protected by the Eleventh Amendment."). Because there is no basis on the record before the court to conclude that defendants acted as an alter ego of the state for Eleventh Amendment purposes, their assertion of Eleventh Amendment immunity lacks merit.

In addition, defendants' assertion of qualified immunity is premature. The doctrine of qualified immunity holds that government officials performing discretionary functions are immune from suit where their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A defendant has the burden to establish that he is entitled to qualified immunity. *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004). To determine qualified immunity, the court must consider whether the facts alleged, taken in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right" and also "ask whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see Pearson v.*

*Callahan*, 555 U.S. 223, 236 (2009). At this procedural juncture, the court cannot meaningfully evaluate defendants' assertion of qualified immunity because plaintiff is seeking leave to amend his complaint, and the pleadings in this matter are not yet closed. Accordingly, defendants' motion to dismiss on this basis is denied without prejudice.

Defendants' ripeness argument is similarly premature. Defendants contend that plaintiff's various claims are unripe based on his failure to exhaust available remedies. Case law in this circuit is clear that, before a plaintiff brings a Fourteenth Amendment due process or equal protection claim in federal court, "he must 'have taken advantage of the processes that are available to him …, unless those processes are unavailable or patently inadequate.'" *Deninno v. Municipality of Penn Hills,* 269 F. App'x 153, 156 (3d Cir. 2008) (quoting *Wilson v. MVM, Inc.,* 475 F.3d 166, 176 (3d Cir. 2007)). "Similarly, a plaintiff aggrieved by the enforcement of a municipal zoning ordinance must exhaust all pertinent state procedures before bringing a Fifth Amendment takings claim." *Id.* at 156-57 (citing *Cnty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 164–65 (3d Cir.2006)); *see Williamson Cnty. Reg'l Planning Comm'n. v. Hamilton Bank*, 473 U.S. 172, 186, 194-95 (1985) (holding that an as-applied takings claim against a municipality's enforcement of a zoning ordinance is not ripe until (1) "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue," and (2) the plaintiff has unsuccessfully exhausted the state's procedures for seeking "just compensation," so long as the procedures provided by the state were adequate). This rule is based upon the principle that "'[i]f there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants.'" *Deninno,* 269 F. App'x at 157 (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

10

The court is not in a position, based on the current state of the record, to pass upon defendants' exhaustion argument.[5]  At present, the only evidence in the record pertaining to this issue is a letter dated October 17, 2013 from the Township's counsel to plaintiff, which sets forth a proposed resolution relative to the insurance funds still being held in escrow.  This letter has no relevance to plaintiff's claims based on alleged inadequate police protection, selective enforcement of the law, or the unlawful "taking" of his property.  Accordingly, there is no evidence before the court concerning the remedies that plaintiff may have relative to his claims in Count I, III, or IV.  To the extent the October 17, 2013 correspondence is relevant to plaintiff's procedural due process claim in Count II, the court is not in a position, based on the very limited record at hand, to conclude that defendants' offer constitutes an "adequate remedy."  In light of plaintiff's motion to amend his complaint (ECF No. 22), the court will not consider defendants' evidence at this time.  Defendants' exhaustion argument is denied without prejudice to be reasserted upon an appropriately developed record.

---

[5] Because defendants' exhaustion argument bears on the ripeness of plaintiff's claims, it is in the nature of a factual challenge to the court's jurisdiction and is therefore properly analyzed under Federal Rule of Civil Procedure 12(b)(1).  *See Congregation Anshei Roosevelt v. Planning and Zoning Bd.*, 338 F. App'x 214, 216 (3d Cir. 2009) ("Ripeness is a jurisdictional inquiry, rooted in both the case or controversy requirement of our Constitution's Article III and judge-made prudential limitations on the exercise of judicial authority.") (citing authority); *RLI Ins. co. v. Regulus Group, LLC*, No. Civ. A. 05-1216, 2005 WL 1388630, at *1 (E.D. Pa. June 7, 2005) (treating ripeness challenge as a factual attack on the court's jurisdiction pursuant to Rule 12(b)(1)).  When reviewing a factual attack on jurisdiction, the court need not accord a presumption of truthfulness to plaintiff's allegations, and it may consider and weigh evidence outside the pleadings to determine if it has jurisdiction.  *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *see also Gould Electronics Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000) (citing *Mortensen*, 549 F.2d at 891); *Gordon v. East Goshen Twp.*, 592 F.Supp. 2d 828, 836-37 (E.D. Pa. 2009).  Ultimately, it is the plaintiff's burden to demonstrate that federal subject-matter jurisdiction exists over his claims.  *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005)("'[T]he plaintiff must bear the burden of persuasion'" in connection with a motion to dismiss brought pursuant to Rule 12(b)(1)) (quoting *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.1991)).

*B. Plaintiff's Pleading Deficiencies*

Notwithstanding these conclusions, the court will dismiss the complaint because it is otherwise deficient. In particular, the complaint fails, in numerous respects, to satisfy the pleading standards of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

1. Claims Against the Individual Defendants

To begin, plaintiff failed to allege any plausible basis for establishing liability on the part of the officials whom he has sued. Although plaintiff directs most of his claims against the "Township" (*see* Compl. Count I ¶¶ 2, 5, 7, 9; Count II ¶¶ 11, 14, 15, 17; Count IV ¶¶ 27, 32), his claims arise out of various executive actions, and he named numerous Township officials as defendants in this lawsuit.

"It is well-established that an individual government defendant in an action under § 1983 must have had some personal involvement in the alleged wrongdoing to be held liable." *Valdez v. Danberg,* --- F. App'x ---, No. 13-4259, 2014 WL 3805593, at *3 (3d Cir. Aug. 4, 2014) (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir.2005)). Officials with supervisory authority may be held liable under § 1983 only where their actions are the "moving force" behind the constitutional violation. *Sample v. Diecks*, 885 F.2d 1099, 1116-17 (3d Cir.1989). This "moving force" can be shown where: (1) a supervisor establishes and maintains a policy, practice or custom which directly causes a constitutional harm; or (2) the supervisor participates in violating a plaintiff's rights, directs others to violate them, or has knowledge of and acquiesces in the violations. *Valdez,* 2014 WL 3805593, at *3 (citing decisions).

Here, plaintiff did not allege any facts which demonstrate a plausible basis to infer personal involvement on the part of the individual defendants, with the possible exception of

defendant Payne, who is identified in Count II of the complaint as having been personally involved in the withholding of insurance proceeds. In Count I, plaintiff alleges that all his properties in the Township have been broken into and, because of inadequate police protection, he has been forced to sell them at a significant loss. (Compl. ¶¶ 1-4, 8.) Plaintiff alleges in Count I that he has "tried to get information from the police concerning the break ins" on his property but "was denied all access to record." (*Id*. ¶6a.) Nowhere in the complaint does plaintiff allege personal involvement in this conduct on the part of any individual defendant. Count II, as noted, alleges that Payne withheld payment on a requested reimbursement, but nowhere does it mention the involvement of any other township official. In Count III, plaintiff alleges retaliatory conduct on the part of "code enforcement," but he does not specifically identify the officials who supposedly took action against him and does not specify how they "retaliated ... against [his] property." (Compl. ¶18.). Count IV is premised on the enactment of Ordinance 1963 and references action only by the Township. (Compl. ¶¶ 27, 32.) There are no allegations in the complaint that would provide a plausible basis for inferring supervisory or policymaking liability on the part of the individual defendants. In short, none of the individual defendants, except for Payne, are alleged to have been personally involved in any of the wrongdoing alleged in the complaint.

Without allegations of personal involvement in the alleged wrongdoing, plaintiff cannot maintain a plausible §1983 claim against the individual defendants he has sued. *See Iqbal,* 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") Accordingly, the claims against defendants Conroy, Poston, Bergstrom, Mitchell, Lilly, Marino, and Cieslinski are insufficiently pled and must be dismissed. In addition, all

claims against Payne other than Count II fail for lack of personal involvement and must be dismissed.[6]

## 2. Claims Against the Township

Counts I, II, and IV are ostensibly directed at the Township. (*See* Compl. ¶ 2 (alleging that "Harrison Township does not provide needed patrols by the police"); *id.* ¶¶ 11, 15 (alleging that "the township" is withholding plaintiff's insurance proceeds); *id.* ¶¶ 27-28, 31- 32 (alleging that the Township enacted Ordinance 1963 which constitutes a "taking," and, as a result, the Township owes plaintiff "the full value" of his property). To establish liability on the part of the Township, plaintiff must allege facts showing that the alleged constitutional violation was caused by an official Township policy or custom. *See generally Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91 (1978). "A municipality cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*." *Thomas v. Cumberland County,* 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell*, 436 U.S. at 691). "[L]iability is imposed 'when the policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the moving force behind the constitutional tort of one of its employees.'" *Id.* (quoting *Colburn v. Upper Darby Twp*., 946 F.2d 1017, 1027 (3d Cir.1991)).

Plaintiff's averments are insufficient to establish a plausible inference of municipal liability relative to any of the constitutional torts alleged. With respect to Count I, the complaint alleges no facts showing that the lack of police protection in Harrison Township is the result of an official Township policy or custom. Plaintiff offers only conclusory allegations that: "Harrison Township does not provide needed patrols by the police to protect [his] property"

---

[6] As discussed below, Count II fails to plead a plausible constitutional violation and will be dismissed for that reason.

14

(Compl. ¶ 2); "there is no way to protect [his] property due to the negligence of the township" (*id.* ¶5); and his "substantive due process rights are being denied"... because "the township neglects its responsibilities" (*id.* ¶ 7). These conclusory averments are insufficient to establish a plausible basis for municipal liability. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir.2009) (noting that "[a]fter *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss").

In Count II, plaintiff alleges that Payne refused to release insurance proceeds as reimbursement for repair work he performed to his building, but he made no allegations to support a plausible inference that Payne is a final policymaker with respect to disposition of the insurance proceeds or that she acted pursuant to an official Township policy or custom. Instead, plaintiff offers only conclusory averments that his money is being withheld by the "Township." (Compl. ¶11 ("The township withheld 15% of the damages in both fires in the amount of $35,601.40."); *id.* ¶15 (requesting a "full accounting of all monies being held by the township"). At most, plaintiff's allegations are *consistent* with a finding of municipal liability; however, a complaint that alleges mere consistency with a defendant's liability "'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557).

Count III asserts an equal protection violation based upon allegedly discriminatory enforcement of local land usage regulations. The complaint refers only to actions taken by "code enforcement" (Compl. ¶¶ 18, 21, 24), but it does not identify the relevant actors. The complaint also does not allege that the actors were final policymakers with respect to the enforcement decisions they made or that the alleged actions by "code enforcement" were perpetrated pursuant

to an official policy or custom. Thus, to the extent Count III is directed at the Township, it fails to state a plausible basis for municipal liability.

In Count IV, plaintiff alleges that the Township has effectuated a taking of his property by virtue of the enactment of Ordinance 1963. Unlike plaintiff's other claims, his fourth claim establishes a plausible basis for inferring that an official policy is the moving force behind the alleged wrongdoing. However, Count IV still fails to establish a plausible basis for municipal liability because the allegations of unlawful "taking" are completely conclusory. Strewn throughout Count IV are various statements of Fifth Amendment "takings" law which may be disregarded by the court. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997) ("[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss.") (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir.1997)). Setting those aside, plaintiff avers that "Harrison Township enacted an ordinance no. 1963" (Compl. ¶ 27), which "transfers a conveyance to the deed without due process and without compensation to the owner" (*id.* ¶ 28) and thus constitutes a "total economic taking." (*Id.* ¶ 29.) Plaintiff asserts that the "[t]erms and conditions brought about by Township Ordinance No. 1963 makes any transfer of [his Garfield Street] property ... unsellable and virtually worthless." (*Id.* ¶31.) He asserts that a "taking has taken place and the township owes the plaintiff full value of said property under eminent domain." (*Id.* ¶32.) These conclusory allegations are insufficient to plead a plausible Fifth Amendment violation. *Iqbal,* 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Twombly,* 550 U.S. at 555).

In sum, the complaint fails to allege factual content sufficient to support a plausible entitlement to relief against the Township with respect to Counts I through IV of the complaint. As those claims are deficient, they will be dismissed.

### 3. Plaintiff's Failure to Plead a Plausible Fourteenth Amendment Violation

Apart from the foregoing deficiencies, the complaint fails to plead a plausible violation of the Fourteenth Amendment. Consequently, Counts I through III must be dismissed on this basis as well.

As noted, plaintiff's first claim alleges a substantive due process deprivation based upon the theory that inadequate police protection in the Natrona section of the Township has resulted in perpetual crime and a corresponding loss in the value of plaintiff's property situated there. "[T]he touchstone of due process is protection of the individual against arbitrary action of government." *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (internal quotation marks and citation omitted). "[W]here the challenge is to executive rather than legislative action, 'only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'" *Nicini v. Morra,* 212 F.3d 798, 810 (3d Cir. 2000) (*en banc*) (quoting *Lewis*, 523 U.S. at 846). Accordingly, to establish a substantive due process claim under §1983, plaintiff must prove (1) the particular interest at issue is protected by the Fourteenth Amendment, and (2) the government's deprivation of that protected interest shocks the conscience. *Connection Training Serv. v. City of Phila.,* 358 F. App'x 315, 319 (3d Cir. 2009); s*ee Gottlieb v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 172 (3d Cir.2001) (substantive due process is violated when state conduct is "'arbitrary, or conscience shocking, in a constitutional sense'") (quoting *Le*wis, 523 U.S. at 847).

Assuming plaintiff plead a constitutionally protected property interest, his claim is nevertheless insufficient to state a viable substantive due process violation because it alleges only negligent conduct on the part of the Township. (Compl. ¶ 5 ("There is no way to protect my property due to the negligence of the township."); *id.* ¶ 7 (alleging that the Township "neglects its responsibilities").) The kind of conduct necessary to establish "conscience shocking" behavior is a fact-specific inquiry which depends upon the nature of the executive action being challenged, *see Nicini,* 212 F.3d at 810 (discussing conduct that rises to a conscience-shocking level sufficient to violate substantive due process in a variety of distinct factual settings); however, "[m]ere negligence is never sufficient for substantive due process liability." *Id.*

Count I is also deficient insofar as it alleges that "[p]roperty rights have been violated when the township seeks to regulate commerce on residential property." (Compl. ¶ 9.) This conclusory allegation appears to invoke an altogether different substantive due process theory without any factual content to state a plausible violation. As previously noted, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a viable cause of action. *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555). To the extent plaintiff is premising his substantive due process claim on the application of a local land usage ordinance, the claim is dismissed for insufficient pleading.[7]

---

[7] The Supreme Court has indicated that, in the context of governmental regulation of land usage, a substantive due process violation may be established where a regulation "goes so far that it has the same effect as a taking by eminent domain" and is therefore "an invalid exercise of the police power." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 197 (1985). Additionally,

the [Third Circuit] Court of Appeals [has] provided the lower courts with some guidance on what qualifies as conscience shocking behavior in the land use context, including: evidence of "corruption or self-dealing," the hampering of development in order to interfere with otherwise constitutionally-protected activity, municipal action reflecting "bias against an ethnic group," or evidence indicating a "virtual taking" of the claimant's property. *Eichenlaub* [*v. Twp. of Indiana*,

In Count II, plaintiff alleges a procedural due process deprivation based upon the theory that his insurance proceeds were wrongfully withheld pending repairs to a building on his property at 58-60 Garfield Street. Plaintiff avers that two fires occurred on the property and $35,601.40 in property insurance proceeds have been withheld by the Township. (Compl. ¶¶10-11, 16.) He claims that, after making $4,900.00 worth of repairs to the roof of the building, he submitted the bill to Payne, but she denied his request for reimbursement. (*Id.* ¶¶ 12-14.) According to the complaint, Payne's denial of reimbursement was contrary to her own instructions and past practices. (*Id.* ¶ 13.) Plaintiff alleges that "[t]he township secretary had a duty before this all happened to inform me of the correct procedure." (*Id.*)

Although plaintiff pleaded factual detail in Count II, he did not plead detail that demonstrates a plausible constitutional violation that would entitle him to relief. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir.2009) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 234–35 (3d Cir.2008)). To state a procedural due process claim, plaintiff must allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Mulholland v. Government Cty. of Berks, Pa.*, 706 F.3d 227, 238 (3d Cir. 2013). Here, plaintiff arguably alleged the deprivation of a property interest, but he

_____

385 F.3d 274, 285-86 (3d Cir. 2004)]. By the same token, the Third Circuit likewise listed examples of conduct that is [sic] *not* sufficiently egregious or outrageous, such as: applying certain regulations to one parcel of property but not to others, making unannounced or unnecessary inspections of the property, delaying permits and approvals, improperly increasing tax assessments, or "malign[ing] or muzzl[ing]" claimants. *Id.* at 286. While these lists are not exhaustive, the Third Circuit has noted that allowing only the most outrageous conduct to qualify as conscious shocking prevents federal courts from "being cast in the role of a 'zoning board of appeals.'"

*Long v. Bristol Twp.,* Civil Action No. 10–1069, 2012 WL 2864410, at *7 (E.D. Pa. July 11, 2012) (latter alterations in the original) (closing citation omitted). In amending his complaint, plaintiff should bear the foregoing principles in mind.

did not plead any factual content about the procedures that are available to address the alleged property deprivation, and did not plead facts that could plausibly show that those procedures are constitutionally inadequate. *See Vurimindi v. City of Phila.,* 521 F. App'x 62, 65 (3d Cir. 2013) (a plaintiff must show, as part of his procedural due process claim, that the state procedure for challenging the alleged deprivation was "constitutionally inadequate") (citing authority). The Third Circuit Court of Appeals has observed that "'[a] state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error by a local administrative body.'" *Virimindi,* 521 F. App'x at 65 (quoting *DeBlasio v. Zoning Bd. of Adjustment for Twp. of West Amwell*, 53 F.3d 592, 597 (3d Cir.1995), *abrogated in part on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 400 (3d Cir.2003)). "[P]ost-deprivation hearings and common law tort remedies can be constitutionally adequate 'where the potential length or severity of the deprivation does not indicate a likelihood of serious loss and where the procedures ... are sufficiently reliable to minimize the risk of erroneous determination.'" *Perano v. Twp. of Tilden,* 423 F. App'x 234, 237 (3d Cir. 2011) (quoting *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 19 (1978)).

In this case, plaintiff may have remedies under state law to pursue the insurance proceeds that he claims are being wrongfully withheld. Because plaintiff offers no allegations that would permit a plausible inference that he was denied a constitutionally adequate procedural remedy for the alleged deprivation of his insurance money, Count II fails to state a viable claim under §1983.

In Count III, plaintiff asserts an equal protection violation based upon a theory of selective enforcement. Plaintiff alleges that "code enforcement" retaliated "against [his] property" (Compl. ¶18) because he "questioned about [his] fire money" and made "demands on

20

code enforcement to do their job" with respect to an adjacent property (*id.*). He claims he is being "singled out for [his] opinion for the neglect of Harrison [Township] and for demands of [his] fire money." (*Id.* ¶ 26.) Defendants contend that plaintiff did not state a valid equal protection claim because he is not a member of a protected class and did not allege that other similarly situated people were differently treated.

"To establish a selective enforcement claim, a party must demonstrate '(1) that he was treated differently from other similarly situated individuals, and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor ... or to prevent the exercise of a fundamental right.'" *Suber v. Wright*, ---F. App'x ----, No. 13–1878, 2014 WL 3747696, at *3 (July 31, 2014) (quoting *Dique v. New Jersey State Police*, 603 F.3d 181, 184 n. 5 (3d Cir.2010)). Persons are "similarly situated" for equal protection purposes when "'they are alike in all relevant aspects.'" *Id.* (quoting *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir.2008)). At the motion to dismiss stage, plaintiff "must allege facts sufficient to make plausible the existence of such similarly situated parties." *Perano v. Twp. of Tilden,* 423 F. App'x 234, 238 (3d Cir. 2011).

Here, plaintiff alleged only that there are "4 other properties which were far worse than ours within eye shot of my property." (Compl. ¶23.) Plaintiff complains that his inquiries about "what was being done" with respect to "the other 4 properties... that have code violations... have not been answered to date." (*Id.* ¶ 25.) Absent more specific factual allegations about these allegedly similarly situated parties, no plausible inference can be drawn that the parties are like plaintiff in all relevant aspects. *See Perano,* 423 F. App'x at 238-39.

In addition, Count III fails to provide sufficient factual content concerning the nature of the retaliation which has allegedly been perpetrated against plaintiff. The complaint vaguely

asserts retaliation "against [plaintiff's] property (Compl. ¶ 18) and alludes to a September 18, 2013 meeting in which plaintiff "showed up to deal with the violations" and for inspection of the work that was completed to the roof of his building.  (*Id.* ¶21.)  However, it is not clear from the complaint what specific actions have been taken against plaintiff or (as noted above) by whom they were taken.  As the complaint currently stands, plaintiff  pleaded a *possible* equal protection violation, but not a *plausible* violation.  *See Iqbal*, 556 U.S. at 678.  Consequently, Count III will be dismissed.

### C.  Plaintiff's Motion to Amend the Complaint

The court also has pending before it plaintiff's motion to amend the complaint (ECF No. 22).  Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend should "be freely given when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A district court may exercise its discretion and deny leave to amend on the basis of undue delay, bad faith, dilatory motive, prejudice, or futility.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997).

The court already addressed defendants' assertions of Eleventh Amendment and qualified immunity as well as their argument for dismissal of the complaint on ripeness grounds.  None of these arguments justifies denying plaintiff's motion to amend his complaint.

With respect to Count IV of the complaint, defendants made the additional argument that plaintiff cannot state a viable Fifth Amendment "takings" claim because Ordinance 1963 is a valid land usage regulation.  Defendants cite numerous decisions in support of the general principle that "the State has full power to prohibit an owner's use of property if it is harmful to the public."  (Defs.' Br. Supp. Mot. Dismiss or, Alternatively, Mot. Summ. Judg. 18, ECF No. 18.)

Although this argument may ultimately prove to have merit, it is not an appropriate basis for dismissing plaintiff's Fifth Amendment claim at this procedural juncture.  In determining whether a Fifth Amendment "taking" has occurred, "courts examine a regulation's 'character' and 'economic impact,' asking whether the action goes beyond 'adjusting the benefits and burdens of economic life to promote the common good' and whether it 'interfere[s] with distinct investment-backed expectations.'"  *Koontz v. St. Johns River Water Managemetn Dist.,* --- U.S. ---, 133 S. Ct. 2586, 2604 (2013) (Kagan, J., dissenting) (quoting *Penn Central Transp. Co. v. New York City,* 438 U.S. 104 (1978)); *see Gach v. Fairfield Borough,* 921 F. Supp. 2d 371, 377 (E.D. Pa. 2013) (in determining whether a taking under the Fifth Amendment has occurred, courts consider (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct, investment-backed expectations, and (3) the character of the governmental action).  These kinds of considerations involve fact-specific inquiries which are not yet sufficiently developed in this case.  *See Gach,* 921 F. Supp. 2d at 377 ("The Supreme Court has … emphasized … that there is no 'set formula for identifying a taking forbidden by the Fifth Amendment.'  Instead, an *ad hoc* factual inquiry into the circumstances of each particular case is necessary.")

In light of plaintiff's *pro se* status, the court finds that it is appropriate to grant him leave to amend his complaint.  Plaintiff's motion will be granted, however, with the admonition that his amended pleading must conform to the pleading requirements of *Iqbal* and *Twombly* and must set forth sufficient factual content to establish a plausible constitutional violation in light of the principles discussed in this memorandum opinion.

**V.  <u>Conclusion</u>**

Based on the foregoing considerations, defendants' motion to dismiss (ECF No. 4) will be granted. Plaintiff's motion to amend the complaint (ECF No. 22) will also be granted. Plaintiff shall file an amended complaint within twenty days of the entry of the order accompanying this memorandum opinion. Failure to do so may result in the dismissal being with prejudice.

An appropriate order follows.

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Chief United States District Judge

Dated: September 23, 2014